UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN

KENDRA OVERLA

      Plaintiff,

v.

Case No:
Hon.

CITY OF ALMA,

PHILLIP MOORE,
CITY MANAGER OF ALMA,
individually and in his official capacity,

      Defendants.
_____/
BURGESS SHARP & GOLDEN, PLLC
Attorneys for Plaintiff
By: Heidi T. Sharp, P69641
43260 Garfield Rd., Suite 280
Clinton Township, MI 48038
(586) 226-2627
Heidi@bsglawfirm.com
_____/

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

NOW COMES PLAINTIFF, KENDRA OVERLA, by and through her attorneys, BURGESS SHARP & GOLDEN, PLLC, and for her Complaint against the above-named Defendants states as follows:

**PRELIMINARY STATEMENT**

1. This action arises under 42 USC §1983, et. seq. and the United States Constitution and Bill of Rights; under Title VII of the Civil Rights Act of 1964 ("TITLE VII"); under the Equal Pay Act of 1963.

2. The controversy contains Federal Questions, *inter alia*, the resolution of a claim based on the United States Constitution by a United States citizen and violations of the United States Code, namely section 42 USC 1983, and the award of attorney fees under Section 1988.

3. Plaintiff is an employee of the Defendant City and a United States Citizen who for all pertinent times resided within the geographical bounds of the United States District Court for the Eastern District of Michigan.

4. Defendant City of Alma ("City" or "Alma") is a Michigan municipality located within the geographical bounds of the United States District Court for the Eastern District of Michigan.

5. Defendant Phillip Moore ("Moore") at times relevant to this Complaint was a person acting under color of State law, as City Manager of the City of Alma.

6. The amount in controversy is in excess of $75,000, exclusive of attorney fees or costs.

7. That jurisdiction is otherwise proper in this Court.

8. That venue is otherwise proper in this Court.

## COMMON ALLEGATIONS

9. Plaintiff restates and re-alleges the above paragraphs as if stated fully herein.

10. Kendra Overla is a long-term employee of the City of Alma, beginning her employment on or about December 6, 1999 as a police officer.

11. Plaintiff was employed as a patrol Lieutenant from September 2007 – March 27, 2018. On March 28, 2018 she was appointed as "Police Chief".

12. During the years of 2011- 2013 Plaintiff was a member of the Alma fire department.

13. Plaintiff ended her career with the fire department because she was treated in a discriminatory and disparate manner from other male members of the fire department, particularly by Dave Walsh. Further, Plaintiff did not receive the same pay or benefits with the fire department as other male members of the department.

14. Plaintiff is the only female who has been in a command position with Defendant Alma police department during her employment.

15. Plaintiff is the only female who has held a Lieutenant position since she began in that position.

16. Dave Walsh was the Defendant City's Director of Public Safety from 2003-2017. In this role he oversaw the police department and particular duties of the fire department.

17. Defendant Moore was Defendant Alma's City Manager from 2004-2017.

**<u>Plaintiff's Denial of Promotion to Director of Public Safety</u>**

18. In or about early 2017, then-Director Dave Walsh retired as the Director of Public Safety.

19. Despite being the most qualified to hold the role of Interim Director while a new one was sought because Plaintiff had the most time as a command officer (within the department), the most education (among command officers within the department), and the most experience (within the department) and expressing her desire for the position, Plaintiff was not appointed to the role of Interim Director.

20. Plaintiff was contacted on or about April 6, 2017 by Defendant Moore who informed her that he had chosen Sgt. Mark Williams, a lower-ranking officer as the Interim Director. When asked what Plaintiff was lacking for the position or what she could improve upon, Defendant Moore had no response and could not explain why he chose Williams.

21. As a result of receiving the Interim Director position, Williams received a pay increase over and above the compensation Plaintiff received, the title of Interim Director and Plaintiff began reporting to him. Previously, Williams reported to the Plaintiff.

22. Williams was chosen as Interim Director because he is male. Plaintiff was not chosen as Interim Director because she is female.

23. During the same time period, Plaintiff applied for the permanent Director position as posted by Defendant City. The posting and interview process was being conducted by the Michigan Municipal League ("MML").

24. Plaintiff is the only person within the Defendant's police department who had all of the qualifications to apply for the permanent Director position. Mark Williams was not qualified to apply for the position.

    a. Plaintiff outranks Mark Williams. Plaintiff was promoted to Lt. in 2007 and has supervised patrol/patrol activities since that date; Williams has been unable to pass the written portion of the Lt. test and was promoted to Detective/Sergeant in 2013. In this role he has only supervised one other Detective.

    b. Plaintiff has a Master's Degree, Williams has only a Bachelor's Degree.

25. Plaintiff was scheduled to be interviewed for the permanent Director position along with approximately four other persons, who were all male.

26. Plaintiff was informed by the MML representative that she was a shoo-in for the position and held the best qualifications for the position.

27. On or about April 25, 2017 Plaintiff attended a Defendant city commission meeting. During this meeting, the city commissioners and various members of the public were discussing the layoffs of two police officers that had been just announced.

28. The layoffs were a matter of public concern because they were allegedly being undertaken due to budget concerns. The public and other police officers were concerned about their employment and the effect the layoffs would have on coverage of the protection of the city.

29. During the public comment portion of the meeting, Plaintiff spoke to the city commissioners regarding her concern that the layoffs could have been avoided and that the persons being laid off were not being treated fairly by the city's administration.

30. Various other persons, including police officers, also spoke during the meeting regarding their views on the budget and how the layoffs could have or should have been avoided.

31. On or about May 4, 2017, Plaintiff was contacted by Kathie Grinzinger from MML. Ms. Grinzinger stated that Plaintiff's invitation to be interviewed for the permanent Director position had been withdrawn by Defendant Moore because of Plaintiff's remarks at the April 25 city commission meeting. Defendant Moore had indicated that he wanted 'loyalty' from his department heads.

32. Shortly thereafter, the entire promotional process for Director was cancelled and Mr. Williams remained as the Interim Public Safety Director with the

benefits and recognition that come with that position. During this time, Plaintiff continued to report to Williams.

33. On or about May 15, 2017, Plaintiff was interviewed by city commissioners Mapes, Piccolo and Mott regarding the promotional process and issues surrounding the interviews for Director.

34. Thereafter, Defendant Moore resigned from his position as City Manager and Matt Schooley was placed in the position of Interim City Manager.

35. During a conversation with Mr. Schooley on or about August 22, 2017 Mr. Schooley informed the Plaintiff Defendant Moore had previously told him that despite being the most qualified for the position, (Moore) never intended to hire Plaintiff for the permanent director position.

**Plaintiff is paid less than males who have the same position/duties**

36. Plaintiff has been paid in a discriminatory and disparate manner throughout her employment with Defendant Alma. Specifically, she has been paid less or received less benefits than male counterparts who have the same rank, duties, or grade because she is female.

37. The position of patrol lieutenant had been historically ranked as a Grade 9 position for all Lieutenants (male) who held it before Plaintiff received the position. In 2015, Defendant Moore reduced Plaintiff to a Grade 8. Plaintiff

received lower pay and benefits than the other males who held the same title, duties, and position as plaintiff.

38. In 2015, Defendant Alma conducted a wage and compensation study for all of the positions in the City. This study reflects that the role of Lieutenant should be ranked as a "Grade 9". Despite this, Plaintiff has been ranked as a Grade 8 since 2015, and throughout the entire time she held the position of Lieutenant.

39. On or about March 28, 2018 when Plaintiff was given the position of Police Chief, she was placed in a Grade 9 rank.

40. In or about February 2018, Plaintiff inquired about her wage and why it is not commensurate with the other Lieutenants in the department. Interim Director Mark Williams and Interim City Manager Matt Schooley indicated that her wage had been previously reduced by Defendant Moore and former-Director Dave Walsh because she was female.

41. Defendant City supplies 'take home' cars to the Police Chief, Lieutenants and Detectives as a benefit and condition of employment. This is a vehicle that the individual can drive throughout their employment to and from their duties with Defendant City.

42. When Plaintiff was initially promoted to Lieutenant she was informed that she would not receive a take home car.

43. Despite persons in lower ranks maintaining take home cars former-Director Walsh denied each of Plaintiff's requests for a take home car from approximately 2007 – 2017.

44. In 2016, an extra car became available within the Defendant police department; rather than give it to the Plaintiff as a take home car, it was repainted and supplied to the fire department at Director Walsh's direction. The fire department had never previously had a car and did not have a need for one.

45. As a Lieutenant plaintiff is responsible for responding to various scenes on a call out basis and each time has to use her personal car, while male Lieutenants always use their take home car for the same duties.

46. Plaintiff has never been given a take home car in her role as Lieutenant or compensated for this benefit because she is a female.

47. Plaintiff has been compensated at a lower rate and received less benefits than other males who held the same rank, duties or position since her elevation to Lieutenant to present.

48. Plaintiff has met with Schooley on multiple occasions regarding her qualifications and the position of Director of Public Safety since he was appointed Interim City Manager. Schooley has appointed Williams as permanent Public Safety Administrator and Plaintiff now permanently reports

to Williams. No steps have been taken to correct or increase Plaintiff's pay to make it equivalent to the grade held by other Lieutenants.

49. On or about November 13, 2017 Plaintiff filed a charge with the EEOC for violation of the Title VII of the Civil Rights Act of 1964, as amended.

50. On January 18, 2018, the EEOC issued Plaintiff a Right to Sue letter, which was received by Plaintiff on or about January 29, 2018.

## COUNT I
## VIOLATION OF THE EQUAL PAY ACT ("EPA")

51. Plaintiff incorporates by reference the preceding paragraphs as if they were fully restated herein.

52. Plaintiff is an employee as defined by 29 USC 203(e); 29 USC 206(a); 29 USC 206(d); 29 CFR 1620.1.

53. Defendant City meets all of the requirements for employer status under the EPA. 29 USC 203(d).

54. Plaintiff is a female who received less compensation than male employees for performing substantially equal work under similar working conditions in violation of the EPA. 29 USC 206(d)(1).

55. Defendants violated the EPA by paying lower wages to a female employee than it paid to male employees for equal work that required equal skill, effort

and responsibility and that were performed under similar working conditions. 29 USC 206(d)(1).

56. The term "wages" encompasses all payments made to an employee as remuneration for employment. 29 CFR 1620.10.

57. Defendants retaliated against Plaintiff for attempting to enforce her rights pursuant to the EPA.

58. Males who reported to Plaintiff received more compensation than Plaintiff for performing less duties.

59. As a direct and proximate result of Defendants' pay discrimination on the basis of sex, Plaintiff has suffered lost wages, benefits, and loss of employment opportunities.

WHEREFORE, Plaintiff requests that this Honorable Court grant whatever legal or equitable relief it finds necessary to compensate Plaintiff for her lost wages, lost benefits, loss of future wages, liquidated damages, punitive damages, loss of employment and advancement of opportunities, humiliation and embarrassment, mental and emotional distress and loss of the ordinary pleasures of everyday life as a result of Defendants' violations of the Equal Pay Act as amended, attorney fees, costs and interest.

## COUNT II
## VIOLATION OF TITLE VII OF THE
## CIVIL RIGHTS ACT OF 1964 AS AMENDED

## Sex Discrimination

60. Plaintiff incorporates by reference the preceding paragraphs as if they were fully restated herein.

61. Plaintiff is a female.

62. Plaintiff is an employee and Defendant City is an employer as defined in the Title VII of the Civil Rights Act of 1964 as amended 42 USC 2000e et seq.

63. Plaintiff's sex was a factor in the decision to deny her compensation, deny her a take home car, treat her differently than other similarly situated males, deny her a promotion to Interim Director of Public Safety, deny her an interview for the permanent Director of Public Safety position, and ultimately treat her less favorably than other similarly situated males or less situated males.

64. Other similarly situated employees who were not females and had similar records and positions were treated more favorably than Plaintiff.

65. The reasons given for not appointing Plaintiff to Interim Director of Public Safety, denying her an interview for permanent Director of Public Safety and treating her differently than similarly situated males were inaccurate, untrue, or otherwise in violation of the Plaintiff's statutory rights and were manufactured as a pretext to cover up the employer's intent to discriminate against the Plaintiff because of her sex.

66. Defendants, through their agents, representatives, and employees, was predisposed to discriminate on the basis of sex and acted in accordance with that predisposition.

67. Defendants' actions were intentional in disregard for Plaintiff's rights and sensibilities.

68. As a direct result of the Defendants' illegal discrimination because of Plaintiff's sex, Plaintiff suffered lost wages, lost benefits, loss of future wages, liquidated damages, loss of employment opportunities, loss of additional training opportunities and emotional distress damages.

   WHEREFORE, Plaintiff requests that this Honorable Court grant whatever legal or equitable relief it finds necessary to compensate Plaintiff for her lost wages, lost benefits, loss of future wages, liquidated damages, punitive damages, loss of employment and advancement of opportunities, humiliation and embarrassment, mental and emotional distress and loss of the ordinary pleasures of everyday life as a result of Defendants' violations of Title VII of the Civil Rights Act of 1964 as amended, attorney fees, costs and interest.

### COUNT III – VIOLATIONS OF 42 USC 1983 (RETALIATION)

69. Plaintiff restates and re-alleges the above paragraphs as if stated fully herein.

70. That Plaintiff made protected speech at a public city commission meeting regarding the layoff of police officers, a matter of public concern.

71. That her speech criticized the Defendants' city administration because she stated that the layoffs did not need to occur and were not necessary to maintain the city's budget.

72. After the Plaintiff made the statements, Defendants withdrew an invitation to interview her for the permanent Director of Public Safety. At the time, the Plaintiff was the most qualified candidate for the position.

73. The invitation to interview was withdrawn because of Plaintiff's statements at the city commission meeting.

74. By singling out and retaliating against Plaintiff for her political and protected First Amendment speech as described herein, deliberately disregarding their obligations under the law in retaliation for Plaintiff's protected First Amendment speech, and withdrawing her invitation to interview for the permanent Director of Public Safety position in retaliation for Plaintiff's protected First Amendment speech, Defendants violated the United States Constitution, 42 USC 1983, and more specifically the First Amendment of the United States Constitution.

75. The retaliatory actions of the Defendants would chill an ordinary person from exercising her First Amendment Rights.

76. As a direct result of Defendants' illegal actions, Plaintiff has suffered damages including loss of income, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and attorney fees.

77. Defendants did so with a reckless disregard of Plaintiff's clearly established constitutional rights.

WHEREFORE, Plaintiff requests that this Honorable Court grant whatever legal or equitable relief it finds necessary to compensate Plaintiff for her lost wages, lost benefits, loss of future wages, liquidated damages, punitive damages, loss of employment and advancement of opportunities, humiliation and embarrassment, mental and emotional distress and loss of the ordinary pleasures of everyday life as a result of Defendants' violations of 42 USC 1983 as amended, attorney fees, costs and interest.

Dated: April 18, 2018                     Respectfully submitted,

                                          BURGESS SHARP & GOLDEN, PLLC

                                          By: /s/ Heidi T Sharp
                                          Heidi T Sharp, P69641
                                          Attorneys for Plaintiff
                                          43260 Garfield Rd., Suite 280
                                          Clinton Township, MI 48038
                                          (586) 226-2627

## **PLAINTIFF'S DEMAND FOR JURY TRIAL**

Plaintiff, through her attorneys, hereby demands a jury trial.

Dated: April 18, 2018                                Respectfully submitted,

BURGESS SHARP & GOLDEN, PLLC

By: /s/ Heidi T Sharp
Heidi T Sharp, P69641
Attorneys for Plaintiff
43260 Garfield Rd., Suite 280
Clinton Township, MI 48038
(586) 226-2627